Breitel, J.
The issue is whether the arrest of the defendant was unlawful because in violation of section 178 of the Code of Criminal Procedure, requiring a police officer to announce his office and purpose before effecting an entrance into private premises in order to make an arrest. If so, the conviction must be set aside, the evidence of the crime having been obtained only as a result of the entrance made without announcement.
Defendant had been convicted in the Criminal Court of the City of New York of possession of narcotics instruments in violation of section 1747-e of the Penal Law, a misdemeanor. Upon his plea of guilty he was sentenced to six months’ imprisonment, which sentence has been fully served.
The Appellate Term unanimously affirmed the conviction without opinion, and a Judge of this court granted leave for a further appeal. The order and judgment should be affirmed.
The statute in question (Code Grim. Pro., § 178) provides: ‘ ‘ To make an arrest, as provided in the last section, the officer *391 may break open an outer or inner door or window of a building, if, after notice of his office and purpose, he be refused admittance. ’ ’
The undisputed evidence establishes that the police officer on radio patrol duty received a “radio run ” to the effect that there was a “ disorderly man at 404 West 115th Street ”. He proceeded to a rooming (converted apartment) house at this address where he was met by the night manager. The officer heard “shouting, screaming, clapping of hands” and the manager stated “that that had been going on for several evenings ’ ’.
The manager then directed the police officer and a fellow officer to a fifth floor “ apartment ”, evidently a division of the converted apartment house. The noise was coming from this apartment. As the officer knocked on the door, the shouting stopped, and a male voice inside said three times: “Wait a minute. Wait a minute, I’m not dressed. ” After a minute’s wait, the officer directed the manager to open the door with his passkey. Upon opening the door they saw defendant standing in the middle of the room, stripped to the waist, and wet with perspiration. He was holding ‘ ‘ a syringe, an eye dropper, with a needle on the end of it, in his right hand”. When defendant saw the three men, he threw the contraband under a bed and the officer placed him under arrest.
Prior to his plea of guilty defendant moved to suppress the evidence obtained against him and, after a hearing, the motion was denied. The hearing court held with respect to the entry into defendant’s premises that “under the circumstances * * * the officer * * * might well have been derelict in his duties if some serious matter were happening in the room there, and he delayed to carry out all of the full and complete requirements of announcing his purpose and authority, et cetera and so forth. I think if he were acting completely on itself [sic] and not acting as a result of a complaint in which the manager of this rooming house joined, it might be a different situation. ”
Defendant contends that there was no probable cause to make an arrest and that the evidence was seized as a result of an entrance in violation of the quoted statute and, therefore, should have been suppressed.
*392 The statute is not applicable. The officer did not come to the premises or to the apartment to make an arrest. He had responded to a call from the manager of a rooming house to investigate an unusual, noisy disturbance. What was the cause of the disturbance and what action would be required upon ascertaining the cause was not determinable in advance by the police or the manager The inquiry might result in no action, in succor for a person or persons in distress with or without criminal causation, in a direction to quiet down, or in a criminal arrest (2 Alexander, Law of Arrest, § 637). The presence of the police and the entrance into the apartment was investigatory and not for the purpose of making an arrest to which the application of section 178 is limited. Apart from the statute, a peace officer was under no duty, by statute or under the common law, to give notice of his office or purpose prior to making an entry into private premises unless the purpose was to make an arrest or to execute other process (Miller v. United States, 357 U. S. 301, 305-310).
Of course, no person may forcibly enter private premises without a privilege to do so. And it is reasonable that the privilege requires a stronger basis where the purpose of the entry is not to make an arrest or execute process. This is the difficult part of the case, although the issue was tendered only on the theory that the entrance violated the arrest statute.
It is critically significant that a rooming house is involved rather than demised premises to which the tenant is entitled to exclusive and undisturbed possession. Rooming houses and inns are equivalent for purposes of determining the legality of entry by the landlord or his agents. In the leading case of de Wolf v. Ford (193 N. Y. 397) the general rule was expressed as follows: “ If the guest is assigned to a room upon the express or implied understanding that he is to be the sole occupant thereof during the time that it is set apart for his use, the innkeeper retains a right of access thereto only at such proper times and for such reasonable purposes as may be necessary in the general conduct of the inn or in attending to the needs of the particular guest. If, for instance, there should be an outbreak of fire, a leakage of water or gas, or any other emergency calling for immediate action in a room assigned to a guest, the innkeeper and his servants must necessarily have the right to enter without *393 regard to the time of day or night and without consulting the wish or convenience of the guest.” (193 N. Y., p. 403.)
The rule is followed elsewhere (29 Am. Jur., Innkeepers, § 51; 43 C. J. S., Innkeepers, § 25). This license to the landlord, of course, does not afford the police an unqualified privilege to engage in otherwise unlawful practices merely on the consent of the hotel proprietor (Stoner v. California, 376 U. S. 483, 489). Here, however, the manager was not acting as the cat’s paw of the police; rather, he had made a call for assistance to which the officers had responded. As such, they were acting in aid of the manager in performance of his duty to the occupants of the building including defendant. There is no evidence that he or they knew what was occurring in the room. Indeed, the officers were called to find out.
Arrests have been upheld often following non-consensual investigatory entries by arresting officers (Ann.: Arrest-Misdemeanor-Entering House, 76 ALR 2d 1432, 1444 et seq.). True, the issues in such cases centered on whether the offense of disorderly conduct had been 11 committed in the presence ” of the officers when they entered dwellings to investigate disturbances they had heard while outside the premises. Nevertheless, the facts as recited in the eases indicate that the entry was made without announcement of identity and without statement of purpose, which certainly was not that of making an arrest because, before entrance, the officers did not have sufficient evidence to make a misdemeanor arrest.
Moreover, even a private individual might make such an entry if it reasonably appears that his intrusion and presence would avert injury to the occupant or his chattels (1 Restatement, Torts 2d, § 197, comment e, illus. 8). The point is that no one would have objected to the entry of the policemen in this case if the defendant had been ill or some other emergency had existed (People v. Roberts, 47 Cal. 2d 374). The fact that the defendant was committing a crime does not retroactively invalidate the entry for it is not defendant’s actions but the intent and purpose of the policeman prior to the entry that controls (see Commonwealth v. Tobin, 108 Mass. 426, 429; cf. McDonald v. United States, 335 U. S. 451, 454).
Ker v. California (374 U. S. 23), involving a forced entry without warrant and without prior announcement of office or pur *394 pose, neither detracts from nor supports the view taken here. In the Ker case the peace officers entered an apartment by means of a manager’s passkey for the purpose of making an arrest, a purpose not present in this case. To that extent the case is immaterial to the instant analysis and it is not necessary to apply the test used there which resulted in a finding that there was compliance with local requirements {id,, pp. 37-39). The Ker case is helpful in one aspect, however, since it held that once a lawful entry was effectuated the police were privileged to seize whatever evidence was exposed to their view even though its exposure or seizure preceded the actual arrest {id., pp. 41-43).
Perhaps it is of the greatest significance to this case that the police officer’s entry was pursuant to his general obligation to assist people in distress — a purpose often independent of considerations affecting the criminal law. Police are expected and often required to investigate the unquelled crying of babies, sounds and blows in what turn out to be matrimonial disputes, to assist in child deliveries, and to resolve the causes of unusual sounds suggesting harm to persons, animals and property. Their functions are just not confined to criminal law enforcement, a matter frequently of great concern to those seeking to make limited police resources more effective. In this context it has been suggested that an officer’s entry is based neither on consent nor license and that even the refusal of consent may be of no avail (cf. Meiers v. Koch Brewery, 229 N. Y. 10,12,15; Beedenbender v. Midtown Props., 4 AD 2d 276, 281; 2 Alexander, Law of Arrest, § 634).
It may be feared that the rule is susceptible of abuse and may be used to validate an otherwise unlawful arrest or seizure. This, indeed, is a danger. Policemen may improperly claim to make “ investigatory entries ” rather than entries for the purpose of effecting arrests. Nonetheless, the fact still remains that in a proper case the statute is inapplicable because it requires that a peace officer identify himself and declare his purpose only when the purpose is to make an arrest. Nor should the police be hampered in the performance of their salutary duty of aiding persons in distress. The trial courts are familiar with police practices and should be able to determine when an entry is in truth only for investigative purposes based *395 on privileged grounds without any intention to make an arrest. In making that determination the courts must be cognizant that there is a strong factual inference that an entry which results in an arrest or seizure of evidence was for the purpose of effecting an arrest or seizure. That inference should prevail unless the police establish a different purpose justified by objective evidence of a privileged basis for making the entry. In this case the evidence undisputedly established a different purpose and a privileged basis for the entry. Salient facts are the call for the police to come to the premises, the manager’s purpose, and the nature of the sounds emanating from defendant’s quarters.
Accordingly, the judgment of the Appellate Term should be affirmed.