113 N.J. Super. 245 (1970)
273 A.2d 587
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MICHAEL JOSEPH ALLEN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 30, 1970.
Decided December 7, 1970.
*246 Before Judges GOLDMANN, LEONARD and MOUNTAIN.
Mr. Charles P. Allen argued the cause for appellant (Messrs. Dietrich and Mancino, attorneys).
Mr. Steven D. Altman, Assistant Prosecutor, argued the cause for respondent (Mr. Edward J. Dolan, Middlesex County Prosecutor, attorney; Mr. Peter J. Schwartz, Assistant Prosecutor, on the memorandum).
The opinion of the court was delivered by GOLDMANN, P.J.A.D.
Defendant appeals, pursuant to leave granted, from an order denying his motion, made before *247 trial, to suppress certain evidence seized in a warrantless search.
On June 7, 1968 police entered a dwelling house in New Brunswick and arrested five men who were present for violations of the narcotics laws. On learning that defendant was the lessee of the premises, the police arrested him on the following Monday, June 10, and charged him with violating N.J.S.A. 24:18-4, possession of narcotic drugs (marijuana and hashish), as well as a local ordinance, not involved in this case, prohibiting the use of a house by disorderly persons for the illegal use of drugs. The statutory violation resulted in an indictment; the ordinance violation is pending disposition of that indictment.
Defendant pleaded not guilty to the indictment and moved to suppress the evidence seized by the police. The denial of that motion brought about this appeal.
At the hearing on the motion New Brunswick Detective-Sergeant James, an officer especially assigned to narcotics investigation, testified that he was called back to duty by police headquarters at about 10 P.M. on June 7, 1968 to investigate "activity" at 1 Neilson Street, New Brunswick. He was advised that there was what appeared to be a party in process at that place. After asking for the assistance of another officer, he and Officer Thomas went to the area to "surveille" the house. He said he heard music coming from the house when he was a block away. He and Thomas "set up" some 15' from the building and observed several people arrive, stay a short while, and then leave. He recognized one person whom he had once arrested in a narcotics raid. Deciding to enter, James knocked on the front door several times, "hit the door a little harder and it opened"  the door was ajar, he said. He called, "Is anybody here," two or three times and, receiving no answer, he and Thomas entered.
James testified that they walked into the living room and, finding no one there, went into another room where they saw a piece of aluminum foil containing a brown cake-like substance which looked like hashish. The officers continued to *248 look around the first floor, but found no one. Since the music was coming from the second floor, they called upstairs and, receiving no answer, decided to check. There they found five men (defendant was not present) lying on the floor under the influence of drugs. The officers observed marijuana cigarette butts ("roaches") in the ashtrays and a greenish vegetable matter in a jar on the floor, which later was found to be marijuana. The arrests followed. On learning that defendant was the one to whom the apartment had been rented, they filed a complaint against him and arrested him three days later.
On cross-examination James said that the complaint he received on the night in question was "information that there was possibly a pot party going on" at 1 Neilson Street. Asked if this could be characterized as a noise complaint, as he had testified on direct examination, his answer was, "Well, the complaint was noise also but the other information that I received is the reason that they called me." He admitted that he made no attempt to obtain a search warrant. Asked if he had probable cause to believe that there might be narcotics in the house which would entitle him to obtain a search warrant, his nonresponsive answer was that they had had the premises under surveillance some five or six months previously. James conceded that ordinarily, on a noise complaint, the normal police procedure was to send a radio car to the address and advise the persons to tone the noise down. In this instance, however, James and Thomas had the house under surveillance for 20 to 30 minutes. None of the several persons who left the place was arrested. Although it was decided to radio for help, he did not ask the officers to obtain a search warrant.
In his letter opinion the motion judge dismissed defendant's argument that there were both grounds and time to obtain a search warrant, stating: "It is quite apparent that the police had nothing to go on excepting mere suspicion. Therefore, whether they had enough time is of no consequence." The question, he said, was whether the police were *249 justified in entering under the circumstances. He noted that their primary mission was to abate the noise problem, notwithstanding their suspicion as to narcotics and the presence of Detective-Sergeant James. Thus, he found that since the officers had been unable to get a response to their knocking and the door was ajar, they had a right to enter. Further, since the hashish was in plain view as they went into the second room of the first floor, the officers then had a right to go upstairs to attract the attention of the occupants, and while there they could seize the marijuana which was in plain view.
Defendant argues that (1) he had the requisite standing to complain of an illegal search and seizure by reason of his leasehold interest in the invaded premises; (2) the State had the burden of showing necessity for a warrantless invasion of a private home; (3) the judge erred in applying the law to the facts, and (4) a warrantless search and seizure, absent an emergency, is illegal where there is time and opportunity to obtain judicial approval.
The State has provided us with no authorities or specific responses to the points raised and argued by defendant. It contends, quite simply, that the officers were there to investigate a noise complaint, although at the same time their suspicions were aroused to a possible violation of the narcotics laws. From experience they realized something was amiss: "Certainly there was cause to believe someone might be injured or unconscious as there was no answer at the door." This simplistic contention will not wash.
There is no question that a defendant may bring a motion to suppress if he has either a "proprietary, possessory or participatory interest" in the place where the evidence in question was found. State v. LaDuca, 89 N.J. Super. 159, 163 (App. Div. 1965).
Similarly, it is clear, as defendant argues, that the burden of proof in a warrantless search situation is on the State. Chimel v. California, 395 U.S. 752, 762, 89 S.Ct. 2034, 23 L.Ed. 2d 685 (1969); State v. Gaudiosi, 97 N.J. Super. 565, 571 (App. Div. 1967).
*250 The motion to suppress should have been granted. We agree with the judge that insofar as the presence of drugs on the premises was concerned, the officers had nothing more to go on than mere suspicion, and this is not enough to establish probable cause for their entering upon the premises without a warrant and proceeding to make a search and seizure. The judge found noise abatement to be the rationale for the entry. We are not convinced, however, that this was so. From the very moment James, as a special narcotics investigator, was called to duty by headquarters and told (so he said) that there was information of a possible pot party going on, to the extended surveillance conducted by the officers, it is clear that the focus of attention was not at all upon noise, but the possibility of uncovering narcotics activity. If noise were truly the reason for the officers' presence outside of 1 Neilson Street, there was no need whatever for waiting up to 30 minutes before entering. James, as has been noted, testified that when there was a noise complaint, a radio car would be dispatched to the site to abate the noise. The officers could have acted immediately upon arriving at 1 Neilson Street, if their true purpose was to put a quietus on the loud music.
As was said in State v. Doyle, 42 N.J. 334, 342 (1964), the right to arrest must pre-exist a search; an officer cannot search in order to arrest, nor arrest because of the product of the search. Further, a search undertaken merely for the purpose of uncovering evidence with which to arrest is unlawful even if the desired evidence is obtained. We have here a classic example of a search grounded on mere suspicion, a suspicion which the officers hoped would turn up some incriminating evidence. Probable cause, or a reasonable basis to believe, is the proper standard for judging a warrantless search case like this, and not mere suspicion. Noise coupled with visitors is an extremely shaky foundation for a warrantless search. This is precisely the situation in which the Fourth Amendment's interposition of a magistrate between the citizen and the police is most necessary. See *251 McDonald v. United States, 335 U.S. 455, 69 S.Ct. 191, 93 L.Ed. 153 (1948).
Only in a few "specifically established and well-delineated situation" may a warrantless search of a dwelling house withstand constitutional scrutiny. These exceptions will exist if there is consent, or if the police involved were responding to an emergency, or if they were in hot pursuit of a fleeing felon, or if the goods were in the process of destruction, or if they were about to be removed from the jurisdiction. See Vale v. Louisiana, 399 U.S. 30, 34-35, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970). And, of course, when an individual is arrested, only his person and the area within his immediate control may be searched  i.e., that area from which he might gain possession of a weapon or destroy evidence. Chimel, above, 395 U.S. at 763, 89 S.Ct. 2034. In Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1947), the police were informed of possible narcotics violations and then went to a hotel room where, standing outside, they smelled opium smoke and subsequently entered the room. The order denying suppression of the evidence was reversed, the court saying:
* * * No reason is offered for not obtaining a search warrant except the inconvenience to the officers and some slight delay necessary to prepare papers and present the evidence to a magistrate. These are never very convincing reasons and, in these circumstances, certainly are not enough to bypass the constitutional requirements. [at 15, 68 S.Ct. at 369]
None of the exceptions noted in Vale was present here. In our view, the noise abatement reason for the entry and search served as nothing more than a smoke screen. If there was any strong reason for the police to believe, after half an hour's surveillance, that there was drug activity on the premises, they should have sought a search warrant. The only argument on which the State can possibly rely is that the evidence might have been destroyed. That argument has no appeal here, for they waited 30 minutes before entering.
*252 Cases in which entries have been upheld presented far more compelling fact circumstances than the case before us. In State v. Owens, 102 N.J. Super. 187, 199 (App. Div. 1968), mod. as to other grounds, 54 N.J. 153 (1969), cert. den. 396 U.S. 1021, 90 S.Ct. 593, 24 L.Ed.2d 514 (1969), an entry was upheld where the "distraught behavior" of one principal and the "violent behavior" of defendant were enough to permit the reasonable inference that a baby's life might be in danger. And in Doyle, above, there was "strong basis" for belief by the officers that an abortion, a relatively unusual crime, which is not the subject of many random surveillances, was being committed. 42 N.J. at 345. See also, People v. Gallmon, 19 N.Y.2d 389, 290 N.Y.S.2d 356, 227 N.E.2d 284, 285 (Ct. App. 1967), where "shouting, screaming and clapping hands" had been heard by police officers and hotel managers for several evenings before entry.
We have no dispute with the Supreme Court warning, in Owens, above, that judicial review of police action, taken in the face of a fast-moving, excited situation, must be a common-sense and realistic fashion. United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). However, this case does not present such a "fast-moving" situation. Whatever the argument the State prefers, the police behavior was proscribed: there was no right to enter without a warrant if they were hunting for narcotics, and there was no general right of entry and exploration if the police were there only to abate noise, an argument, as noted above, that is seriously diluted by their half-hour wait.
The denial of defendant's motion to suppress is reversed.