HENRY FRANCIS, JR. *v.* STATE OF INDIANA.

[No. 1-873A156. Filed September 3, 1974. Rehearing denied October 7, 1974. Transfer denied March 6, 1975.]

*Olsen and Niederhaus,* of Evansville, for appellant.

*Theodore L. Sendak,* Attorney General, *Glenn A. Grampp,* Deputy Attorney General, for appellee.

LYBROOK, J.—Defendant-appellant Francis appeals from a conviction of possession of narcotic drugs, to-wit: opium, raising the following issues for review:

(1) Whether the drugs seized at the time of his arrest are admissible;

(2) Whether testimony concerning a gun seized from defendant at the time of his arrest is admissible;

(3) Whether the trial court erred in overruling defendant's motion for mistrial; and

(4) Whether the trial court erred in instructing the jury as to the penalty.

For several days prior to April 13, 1972, Officer Brinkley of the Evansville Police Department had been investigating tips received from reliable informants notifying him that Francis was engaged in selling drugs. On the morning of April 13, 1972, Brinkley was further advised by the same informants that Francis was carrying drugs and had a firearm on his person. Brinkley then initiated a stake-out of Francis' residence and set into motion the procedures necessary to obtain a search warrant. While returning to the police station to complete the arrangements for the warrant, Brinkley received a call over the police radio from an officer remaining at the stake-out notifying him that Francis had left his residence and was driving north on Putnam Street. Brinkley then turned around and started back to the area of the stake-out in attempt to intercept Francis. Brinkley advised the officers at the stake-out that on his return he wanted to stop Francis' car. At that time, Officer Trible, also of the Evansville police department, notified Brinkley that he had overheard the broadcasts concerning Francis and was driving behind Francis' car. Brinkley ordered Trible to stop Francis. After Trible engaged his siren and flashing red light Francis pulled into a nearby service station. Trible approached Francis and asked him for some identification. Trible then detained Francis for one or two minutes until Officer Brinkley ar-

rived. Brinkley conducted a pat down search of Francis. When this search revealed a revolver stuck in the waistband of Francis' trousers, Brinkley formally notified Francis that he was under arrest and proceeded to conduct a more extensive search of his person. This search disclosed several capsules and a paper sack containing opium. It was for the possession of these narcotic drugs that Francis was convicted.

## I.

Initially Francis challenges the admissibility of the drugs seized from him at the time of his arrest. He maintains that his arrest was unlawful in that the arresting officer, Trible, did not have probable cause to effectuate a warrantless arrest, thereby making the drugs seized inadmissible.

The constitutional validity of a warrantless arrest depends upon whether at the moment the arrest was made, the arresting officer had probable cause to make it—whether at that moment, the facts and circumstances within his knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrestee had committed or was committing an offense. *Beck* v. *Ohio* (1964), 379 U.S. 89, 85 S.Ct. 223.

Francis argues that an order from a fellow officer is not sufficient to justify a warrantless arrest. He maintains that to justify his warrantless arrest, the record must reveal that the arresting officer personally had in his mind knowledge sufficient to establish probable cause. We do not agree.

In our opinion, the existence of probable cause for an arrest should be determined on the basis of the collective information known to the law enforcement organization as a whole, and not solely on the personal knowledge of the arresting officer. The police force is considered as a unit and where there is a police-channel communication to the arresting officer and he acts in good faith thereon, the arrest is based on probable cause when such knowledge and

information exist within the department. *Wisconsin* v. *Mabra* (1974), 61 Wis.2d 613, 213 N.W.2d 545; *Whiteley* v. *Warden* (1971), 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306; *Manson* v. *State* (1967), 249 Ind. 53, 229 N.E.2d 801. Nevertheless, "an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest." *Whiteley* v. *Warden, supra.* Thus, if it is to serve as justification for a warrantless arrest, the information within the police department must still be "reasonably trustworthy" and meet the tests of *Beck* v. *Ohio, supra,* and *Aguilar* v. *Texas* (1964), 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723.

The information concerning Francis known by the Evansville Police Department consisted mainly of Officer Brinkley's personal knowledge and informants' tips. The record reveals that Francis had previously acted as an informant for the Narcotic Division of the Evansville Police Department and during that time, he admitted to Brinkley that he occasionally used narcotic drugs. Additionally, Brinkley was aware of Francis' prior record of misdemeanor and felony convictions. Through various informants Brinkley learned that Francis was actively engaged in selling narcotic drugs and that on the morning of April 13, 1972, he was carrying drugs and a firearm on his person. These tips were received from persons who had on several previous occasions supplied reliable and credible information. The tips were based on actual observations of drug purchases from Francis and observations of Francis' gun. In our opinion the above constitute sufficient facts and circumstances to warrant a prudent man in believing that on the morning of April 13, 1972, Francis had committed or was committing an offense. His warrantless arrest was lawful and the subsequent search of Francis was constitutionally permissible. *Chimel* v. *California* (1969), 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685. Accordingly, we find no error under appellant's first issue.

## II.

Secondly, appellant challenges the admissibility of testimony concerning the gun seized from him at the time of his arrest. Francis maintains that this testimony tended to create an impression in the minds of the jurors that he had committed a crime other than the one charged. He argues that it is a fundamental rule that evidence which proves or tends to prove that the accused is guilty of the commission of crimes other than those charged is inadmissible because of its inflammatory and prejudicial effects. Francis therefore suggests that the admission of this testimony over his objections is grounds for a new trial. We do not agree.

Although we accept appellant's general statement on the admissibility of evidence of other crimes,[1] his arguments under this issue fail for two reasons. First, the record before us clearly indicates that appellant was being tried on two counts: (1) illegal possession of narcotic drugs, and (2) carrying a pistol without a license. Although the State did dismiss the second of these counts at the close of its evidence, the charge was still pending against Francis when the testimony concerning the revolver was elicited. Accordingly, it was proper to admit such testimony. Secondly, it is our opinion that even if Francis had not been charged with illegal possession of a firearm, testimony concerning the revolver is admissible as part of the *res gestae*. In commenting on the *res gestae* exception to the rule concerning admissibility of evidence of other crimes, this court in *Clinton* v. *State* (1974), 159 Ind. App. 189, 305 N.E.2d 897, stated:

"Appellants argue that the introduction of this testimony is erroneous since it tends to prove commission of another crime, that being possession of dangerous drugs, to-wit: Amphetamines. However, this contention must fail since this evidence is admissible as part of the *res gestae*. Appellants gained possession of the drug substance during commission of the crime charged. Hence, the following

1. For general discussion of this rule and exceptions thereto see 29 Am. Jur. 2d, EVIDENCE, §§ 320-333, pp. 366-381.

general rule expressed by our Supreme Court in Kiefer v. State (1960), 241 Ind. 176, 169 N.E.2d 723, is applicable: 'Evidence of another and distinct crime is admissible where it was committed as part of the same transaction. . . . The *res gestae* is not confined to the act charged, but includes acts, statements, occurrences and circumstances which are substantially contemporaneous with the main fact.' " (Footnote omitted.) 305 N.E.2d at 899.

In our opinion, the general rule of *Kiefer* is applicable to the testimony concerning the revolver. We find no error in admitting such testimony.

### III.

During the presentation of the State's evidence, Officer Brinkley, having previously testified, was recalled to the stand for omitted questions. The following ensued:

"Q. Officer Brinkley, you are still under oath. In your search of this defendant did you find anything else on him, any narcotics paraphernalia?

MR. OLSEN: At this time, your Honor, we make an objection to the Officer testifying to whatever he found on the defendant is an illegal search and seizure based upon our motion to suppress and the evidence heretofore heard and continuing objection. It is not germane to the possession which he is charged with and it can do nothing but prejudice the jury.

COURT: What is your purpose, Mr. Davis?

MR. OLSEN: If your Honor please, I think we ought to talk about that outside the presence of the jury.

MR. DAVIS: It would be part of the res gestae, your Honor, if he had that on him. Of course, it would, also, indicate guilty knowledge.

MR. OLSEN: I want to call your Honor's attention to Lovelace again which I think directly states that you cannot prove another crime, convict a man of a crime, proof of one crime to establish another is prejudicial error. One crime cannot be proved in order to establish another distinct crime even though it be of the same kind. Such evidence is highly prejudicial.

MR. DAVIS: That is talking about prior crimes, your Honor. If we argue, I think it should be out of the presence of the jury. Again, it is part of the res gestae.

COURT: I have indicated that I felt that anything taken as part of the search was part of the res gestae, part of the transaction and anything taken in addition to the gun and white powder is admissible. Objection is overruled.

MR. OLSEN: Show my exception, your Honor.

A. No, Sir, I didn't find anything.

Q. You didn't find any hypodermic needles or syringe?

MR. OLSEN: Now, if your Honor please, that is an improper leading question. The Officer said he didn't find anything. I move for a mistrial on that, your Honor. That could be nothing but prejudicial.

MR. DAVIS: His answer was, 'No', your Honor.

MR. OLSEN: It doesn't make any difference what his answer is. We move for a mistrial at this time, your Honor.

COURT: Motion for Mistrial is overruled. The answer is stricken and the question withdrawn.

MR. OLSEN: Will you admonish the jury, your Honor?

COURT: The jury is admonished to disregard the last question.

MR. DAVIS: NO FURTHER QUESTIONS.

MR. OLSEN: I want to renew my motion for a mistrial at this time, your Honor.

COURT: The Court will continue to overrule."

Francis maintains that the harm caused by the prosecutor's questioning could not be cured by a mere admonition to the jury to disregard the question. He therefore suggests that it was reversible error to overrule his motion for mistrial. We do not agree.

It is generally held that where an improper question is asked, any resulting error will be cured when the court, upon request of counsel, promptly admonishes the jury to disregard the question and any response made thereto. *Wright* v. *State* (1972), 259 Ind. 197, 285 N.E.2d 650. If, in the discretion of the trial judge, no prejudice remains after such admonishment, a mistrial should not be granted. *Palmer* v. *State* (1972), 153 Ind. App. 648, 288 N.E.2d 739. The trial judge is in the unique position of being

able to observe the demeanor of the witnesses and attorneys, and to gauge the effects of their conduct and statements upon the jury. Absent a showing of abuse of judicial discretion in denial of the motion for mistrial, we will find no error. In our opinion, appellant has failed to demonstrate such an abuse.

## IV.

In his final assignment of error, Francis maintains that the trial court erred when it gave instructions Nos. 8 and 13, contending that these instructions pertained to a statute which had been repealed by implication. The instructions in pertinent part are as follows:

### INSTRUCTION NO. 8

"The Court instructs you that the statute of our state defining the offense charged in the affidavit reads as follows:

'It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, compound or use any narcotic drug or drugs, except as authorized in the laws of the United States or the State of Indiana, or for any person to be found in a public place under the influence of narcotic drugs.'

"The Statute further provides:

'(c) Any person who possesses or has under his control any narcotic drugs except as authorized under the laws of the United States or of the State of Indiana, shall upon conviction be fined not more than one thousand ($1,000.00) dollars and be imprisoned for not less than two (2) years nor more than ten (10) years.'"

### INSTRUCTION NO. 13

"If you find from the evidence, beyond a reasonable doubt, that the defendant is guilty of the crime of Possession of Narcotic Drugs, as charged in the affidavit, your verdict should be:

'We, the jury, find the defendant guilty of Possession of Narcotic Drugs, as charged in the affidavit, and that he be fined $——— and that he is ——— years of age'—inserting in the first of said blanks a sum of money not exceeding $1,000.00, and in the second of said blanks, the true age of the defendant as disclosed by the evidence. You will not fix his sentence, that is fixed by law." * * *

Francis states that these instructions pertain to the Uniform Narcotic Drug Act, IC 1971, 35-24-1-1 *et seq.*, Ind. Ann. Stat. § 10-3519 (Burns 1956 Repl.). He argues that the Narcotics Act was impliedly repealed by the Indiana Dangerous Drug Act, IC 1971, 16-6-8-1 (Burns Code Ed.), thereby making instructions nos. 8 and 13 improper. We do not agree.

The affidavit for Count I charged Francis with Possession of Narcotic Drugs, to-wit: Opium. Under the applicable provisions of the Narcotics Act, a conviction for this offense carried a penalty of imprisonment for a period of not less than 2 nor more than 10 years and a fine of not more than $1000. The amendment to the Narcotics Act imposing these penalties was approved by the Indiana Legislature on April 1, 1971.[2]

At the time of Francis' arrest, possession of opium was also a proscribed offense under the Dangerous Drug Act. The penalty imposed by the Dangerous Drug Act for possession of opium was imprisonment in the State Prison for a period of not less than 1 nor more than 10 years and a fine of not more than $1000. The amendment to the Dangerous Drug Act that imposed these penalties was approved by the Legislature on April 2, 1971.[3]

The same amendment also provided that for a first conviction for violating the possession section of the Act, the violator could possibly receive a lesser penalty, that being imprisonment in the county jail or state penal farm for a determinate period of from 30 days to 1 year and a fine not to exceed $500.

Francis argues that the inconsistency in the sentencing provisions of these statutes can only be resolved by concluding that the Narcotics Act was impliedly repealed by the Dangerous Drug Act. We do not agree.

The repeal of statutes by implication is viewed with disfavor. *Payne* v. *Buchanan* (1958), 238 Ind. 231, 148 N.E.2d

2. See Acts 1971, P.L. 468, § 3 (c), p. 2115.
3. See Acts 1971, P.L. 212, § 4, p. 836.

537; *Schnee* v. *State* (1970), 254 Ind. 661, 262 ■ N.E.2d 186. In *Schnee,* Justice DeBruler stated that repeal by implication occurs "only if the statutes are so inconsistent that it must be assumed that the Legislature did not intend that both remain in force." The offense of possession of opium as proscribed by the Narcotics Act and its amendments is not inconsistent with that proscribed by the Dangerous Drug Act and its amendments, rather the offenses are identical. The difference in the statutes is the penalty imposed. However, since the applicable penalty provisions of the Narcotics Act and Dangerous Drug Act were approved on April 1, 1971, and April 2, 1971, respectively, it must be assumed that the Legislature intended that both remain in force.

Applying the *Schnee* test, it is our opinion that the Dangerous Drug Act did not impliedly repeal the Uniform Narcotics Act. We find no error in the giving of instructions nos. 8 and 13.

There being no reversible error demonstrated, the judgment of the trial court is affirmed.

Robertson, P.J. and Lowdermilk, J., concur.

NOTE.—Reported at 316 N.E.2d 416.