Memorandum. The order of the Appellate Division is affirmed.
At about 12:30 p.m. on February 6, 1967, in response to *1093 defendant’s telephone summons, two New York City patrolmen were dispatched by headquarters to the address of the defendant. Upon arrival the officers were hailed by the awaiting defendant who explained that there was a man in his apartment who was shot. Uncertain as to the nature of the crime, the officers asked the defendant what had happened and he forthrightly stated that he had shot the man. He led them to the apartment, unlocked the door and motioned the officers to follow him, taking them to the body of the victim. During the course of their inquiry, the officers found, in plain view, a diary and certain other papers which contained incriminating statements evidencing the basis for an intent to harm the victim. The murder weapon was later found under a pillow on the sofa in the living room, where the defendant was being detained. He repeated he had shot the man; and on several occasions the defendant offered to tell the whole story to a Lieutenant Danner of the Police Commissioner’s Confidential Investigating Unit, who was not then present.
Shortly after the body was found, Detective McTigue arrived at the scene and advised defendant of his rights. McTigue reiterated that he was entitled to an attorney and asked if he would prefer to tell him the whole story. Danziger then repeated what he had already told the officers, adding other details voluntarily.
On this appeal the defendant argues for the first time that the introduction into evidence of his diary and personal papers violated his right against compelled self incrimination under the Fifth Amendment. Significantly, however, the defendant failed to raise this issue either at the suppression hearing, during trial or on review at the Appellate Division. Thus, this issue has not been preserved and we do not reach it (People v Loewel, 41 NY2d 609, 611-612; People v Patterson, 39 NY2d 288, 295-296; People v Robinson, 36 NY2d 224).
The statements made by the defendant were found by the suppression court to be free and voluntary and this finding was affirmed on appeal. Under the circumstances in this case, the record before us offers no reason to disturb the affirmed determination that the People sustained their burden of proving that the statements were voluntary beyond a reasonable doubt (People v Huntley, 15 NY2d 72).
The defendant challenges the search of the apartment and, of course, the seizure of the papers and weapon as a violation of his Fourth Amendment rights. The officers were present in *1094 the apartment not only with the consent but at the specific insistence of the defendant. Police presence in the apartment was obviously valid pursuant to the specific request of the defendant and under the general obligation of the police to investigate a violent death, and even to assist people in distress (People v Mitchell, 39 NY2d 173, 177; People v Gallmon, 19 NY2d 389). Seizure of items during investigation of an unexplained death and following the arrest of the defendant upon probable cause, was not violative of then applicable Fourth Amendment protections (United States v Rabinowitz, 339 US 56; Harris v United States, 331 US 145; Marron v United States, 275 US 192; see People v Loria, 10 NY2d 368, 373-374). To the extent that the search may be claimed to have been wider than permitted under Chimel v California (395 US 752) we note that it occurred prior to that decision, which has been held to be without retroactive effect (Williams v United States, 401 US 646; People v Lo Cicero, 28 NY2d 525). As found at the suppression hearing and affirmed by the Appellate Division, the search here was not impermissible.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
Order affirmed in a memorandum.