**David HARRISON, Appellant-Defendant,**

v.

**STATE of Indiana, Appellee-Plaintiff.**

No. 2–680A191.

Court of Appeals of Indiana, Fourth District.

Aug. 25, 1981.

John O. Moss, Moss & Walton, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Frederick N. Kopec, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

CHIPMAN, Presiding Judge.

David D. Harrison is appealing his conviction by a Marion County jury for burglary, IC 35–43–2–1, and theft, IC 35–43–4–2.[1] Harrison contends the trial court erred in denying his motion to suppress evidence found at the time of his arrest, that his verdict was not supported by sufficient evidence and that the court erred by allowing one of the jurors to take written notes continuously during the trial. Harrison also contends counsel failed to provide him with effective assistance at trial.

We affirm the conviction.

## I. MOTION TO SUPPRESS

A reading of the record most favorable to the State discloses that at about 7:00 a. m. on October 9, 1978, Indianapolis police were called to investigate a burglary at the PTS Electronics store, 1406 N. Pennsylvania. Upon arrival, the police found a plate glass window broken, blood inside the store, "a pretty big size puddle of blood" on the sidewalk amid the broken glass and drops of blood leading from the store to an apartment building across the street. Several officers followed the trail of blood while officer Robert Davidson interviewed the store manager, who told Davidson that among the items missing were an electric typewriter and an electric calculator.

The trail of blood led up a flight of stairs to a blood-smeared apartment door. Officer Davidson was summoned. Upon his arrival the police knocked at the door and announced themselves as police officers. There was no response from inside the apartment.

Officer Davidson kicked in the door and the police entered without a warrant. They found Harrison standing at his kitchen sink tending to an injured arm. Blood was in the sink and on the floor. Davidson testified that he could see a typewriter smeared with blood at the foot of Harrison's bed. Officers with Davidson testified that upon entering they could see the typewriter, an electric calculator, a paperweight with PTS Electronics printed on it and a planter with broken glass in it. The items were in plain view in the one-room apartment. Harrison was arrested, his arm bandaged, and he was placed in a police car while the store manager identified the items and police took photographs.

Harrison subsequently moved to suppress the evidence found at his apartment as fruit of an illegal search. He contends the police were without probable cause to believe a felony had been committed when they entered the apartment. Consequently no probable cause existed to arrest Harrison and any subsequent search of the apartment was violative of his constitutional right to be free from unreasonable search and seizure. Moreover, Harrison contends that even if probable cause could be shown, there was time and opportunity to obtain a proper warrant and accordingly no exigent circumstances existed to justify the warrantless entry.

The first issue framed for appeal, then, is under what circumstances may police officers enter a suspect's home with neither an arrest warrant nor a search warrant, and whether any of those circumstances exist in this case. Where there is probable cause that a particular suspect is

1. "IC 35–43–2–1. Burglary.—A person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary, a class C felony."

"IC 35–43–4–2. Theft—(a) A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a class D felony."

inside the home, a warrant is a condition precedent to a valid search and seizure except where the exigencies of the situation require an immediate response. *Payton v. New York*, (1980) 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639; *Ludlow v. State*, (1974) 262 Ind. 266, 314 N.E.2d 750; *Rihl v. State*, (1980) Ind.App., 413 N.E.2d 1046. The validity of a warrantless search thus turns upon the facts and circumstances of each case. *Rihl v. State, supra.*

The United States Supreme Court in *Payton v. New York, supra,* held that the Fourth Amendment to the United States Constitution, made applicable to the states by *Mapp v. Ohio*, (1961) 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 and *Wolf v. Colorado*, (1949) 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782, prohibits police from making a warrantless and nonconsensual entry into a suspect's home to make a routine felony arrest. The Court in *Payton,* however, did not have an "occasion to consider the sort of emergency or dangerous situation, described in our cases as 'exigent circumstances,' that would justify a warrantless entry into a home for the purpose of either arrest or search." *Payton v. New York, supra,* 100 S.Ct. 1371 at 1378.

██ In Indiana, a police officer may enter a suspect's home to make a warrantless arrest if the officer complies with the provisions of IC 35–1–19–6.[2] In other words, a police officer may, after "knocking and announcing," enter a suspect's home to make a warrantless arrest when he has probable cause to arrest the suspect and exigent circumstances make it impracticable to obtain a warrant. *Britt v. State*, (1979) Ind.App., 395 N.E.2d 859.

██ Probable cause to arrest exists where the facts and circumstances within the arresting officer's knowledge, or of which he had reasonably trustworthy information, would lead a reasonably prudent man to believe the arrestee had committed or was committing an offense. *Francis v.*

*State,* (1974) 161 Ind.App. 371, 316 N.E.2d 416.

██ Harrison's two-prong attack on the evidence in the case at bar challenges both the sufficiency of probable cause and the existence of exigent circumstances. The defendant contends the police could not have known a felony had been committed when they entered the apartment, and there was no emergency which would justify entry without a warrant. We disagree. The facts necessary to demonstrate the existence of probable cause for a warrantless search are not materially different from those which would authorize the issuance of a warrant if presented to a . magistrate. *Whiteley v. Warden*, (1971) 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306; *State v. Mooney,* (1979) Ind.App., 398 N.E.2d 698. The record indicates Officer Davidson had interviewed the PTS manager before going to Harrison's apartment and knew certain items had been stolen. Therefore, Davidson knew he was investigating a burglary. Testimony at trial indicates that blood at the scene and on the apartment door was still wet and led directly from the burglarized store to the apartment. It was therefore at least probable the suspect was inside and bleeding. Where police are led by a still-wet trail of blood to an apartment from a burglary scene where there is broken glass and a pool of blood, sufficient probable cause exists to support a warrant to search the apartment for the suspect believed to be hiding inside.

However, probable cause alone is not sufficient to justify entry into a suspect's home to search or arrest without a warrant. *Payton v. New York, supra.* In the case at bar, the fresh blood on the door was not only an indication the suspect was inside but also was injured and possibly still bleeding. Because the suspect failed to respond to the officer's knocks and calls, it was not unreasonable to infer he was unconscious or at least unable to answer. Police officers

---

2. "35–1–19–6 Arrest—May break doors.—To make an arrest in criminal actions the officer may break open any outer or inner door or window of a dwelling house or any other build-

ing or inclosure to execute the warrant, if, after notice of his authority and purpose, he be refused admittance."

testified there was a "fairly good amount of blood on the glass" at the store, that "there was a considerable amount of blood in front of the store and going to the apartment," that "there was blood smeared on the door," and that there were "drops of blood on the carpet leading to Mr. Harrison's apartment." Officer Davidson testified that, "Well, we believed that possibly the suspect who had been involved was in there and that, also, since there was a considerable amount of loss of blood, we were concerned for the safety of his life. There was, like I say, a lot of blood and we didn't know exactly what situation he was in."

It does not seem unreasonable to this court that a police officer could believe a person was injured and bleeding heavily inside the apartment and time was of the essence to aid the injured. That hindsight might later show emergency aid was not required is not material to determining the reasonableness of the officer's judgment immediately before entering the home.

We hold that evidence of bleeding in sufficient quantity to produce a puddle of fresh blood at the scene and a trail of blood across a street and up a flight of stairs is a sufficient exigent circumstance to permit police to enter a home without a warrant to aid the victim after there is no response to the officer's knocks or calls.

Where there is probable cause that a suspect is inside his home, and where there is evidence he is injured and bleeding heavily, police need not delay their efforts to reach him. Justification to enter the privacy of a home to aid the injured, however, is not a carte blanche to search a home for criminal evidence. In the case at bar, only those crime-connected items within the plain view of the officers may be subject to seizure and then only if observed from a vantage point at which the officer is lawfully present, its incriminating nature is immediately apparent and its discovery is inadvertent. *Coolidge v. New Hampshire*, (1971) 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564; *Ludlow v. State*, (1974) Ind., 314 N.E.2d 750.

■■ At the time of entry, police officers knew an office typewriter and calculator had been stolen. At trial, officers testified that upon entering the one-room apartment, they could see a typewriter and calculator similar to the ones taken and could see a paperweight on a bedstand with PTS Electronics written on it and a planter with broken glass in it. Because these items were in plain view, were clearly incriminating and discovery of the items was not the primary purpose of the entry, the seizure of the evidence was justified. The trail of blood and Harrison's possession of the stolen items formed the basis for the defendant's subsequent arrest. An officer may arrest a person without an arrest warrant when he has probable cause to believe a felony has been committed, and the person arrested has committed the crime. *Battle v. State*, (1981) Ind., 415 N.E.2d 39; *Grzesiowski v. State*, (1976) Ind.App., 343 N.E.2d 305.

We find the trial court did not commit error by allowing the evidence obtained at the defendant's apartment to be admitted at trial.

## II. SUFFICIENCY OF THE EVIDENCE

On appeal, Harrison argues there is insufficient evidence of probative value to show that the person who committed the burglary was the same person whose blood police followed to the apartment. We disagree. When questions concerning the sufficiency of the evidence are presented on appeal, we will consider only the evidence which is most favorable to the State, together with all the logical and reasonable inferences to be drawn. Furthermore, we will not weigh the evidence or determine the credibility of the witnesses. *Schilling v. State*, (1978) Ind., 376 N.E.2d 1142. If there is substantial evidence of probative value which would allow a reasonable trier of fact to find the existence of each element of the offense beyond a reasonable doubt, the judgment must be affirmed. *Schilling, supra.*

■ A burglary conviction may rest upon circumstantial evidence, including the

unexplained possession of recently stolen property. *Goodpaster v. State*, (1980) Ind., 402 N.E.2d 1239; *Campbell v. State*, (1971) 256 Ind. 40, 266 N.E.2d 797. We do not have to find that circumstantial evidence is adequate to overcome every reasonable hypothesis of innocence but only that an inference may reasonably be drawn which supports the finding of the trial court. *Hall v. State*, (1980) Ind., 405 N.E.2d 530.

In the case at bar, the evidence which supports the finding of the trial court shows there was a violent breaking and entering into the store and that police followed a trail of fresh blood of the same type as that of the defendant to his apartment. Upon entering the apartment police found the defendant in possession of stolen goods from the PTS Electronics store. The items were identified by the store manager. The defendant offered no explanation for the presence of stolen items in his home, and the unexplained possession of property recently stolen during a burglary will support an inference of guilt. *Goodpaster v. State, supra*. In light of this principle and all the evidence adduced at trial, we will not disturb the jury's finding that Harrison committed the burglary in question.

### III.  NOTE TAKING BY JURY

Harrison next contends that the court committed reversible error by permitting one of the jurors to continuously take written notes during the trial.

No objection was made by the defendant at trial when the court distributed pads and pencils to the jurors nor does the record disclose continuous and distracting note taking by any juror. An error alleged but not disclosed by the record is not a proper subject for review. *Mendez v. State*, (1977) 267 Ind. 309, 370 N.E.2d 323.

### IV.  INEFFECTIVE LEGAL ASSISTANCE

Finally the defendant contends he was without effective assistance of trial counsel. The defendant cites one example purporting to show ineffective counsel: failure by his attorney to call as a witness the emergency room physician who had sutured the defendant's arm several hours before the burglary.

In Indiana, an attorney is presumed to have rendered competent representation and only clear and convincing evidence to the contrary will rebut this presumption. *Baker v. State*, (1980) Ind., 403 N.E.2d 1069; *Robertson v. State*, (1974) 262 Ind. 562, 319 N.E.2d 833. "Isolated poor strategy, bad tactics, a mistake, carelessness or inexperience does not necessarily amount to ineffective counsel unless, taken as a whole, the trial was a mockery of justice." *Blackburn v. State*, (1973) 260 Ind. 5, 22, 291 N.E.2d 686, 696.

The defendant alleges that counsel refused to call the only witness alive who could testify whether a cut suffered several hours before the burglary could have been reopened by throwing a brick through a window.

The record indicates the defendant had been treated at Methodist Hospital in Indianapolis at three o'clock on the morning of the burglary for a cut left forearm. The wound required five or eight sutures to close. The defendant was released at 4:09 a. m.

In an effort to prove he could not have been bleeding at the time of his arrest, the defendant apparently hoped the emergency room physician who treated him the morning of October 9 would testify that the wound could not have reopened. To that end the record shows the defendant asked *The Indianapolis News* to locate and contact the physician for him. The newspaper found the treating physician, Dr. Jeff Hagedorn, in Memphis, Tennessee. Hagedorn told the newspaper he had already been in contact with the defendant's former attorney and had advised counsel that although he had been working in the emergency room at Methodist Hospital the morning the defendant was treated, he could not specifically remember the defendant. We note that counsel instead called the physician in charge of the emergency

room to testify on the defendant's behalf. Dr. James Brantly was asked on direct examination to look at the hospital records and give his expert opinion as to whether the wound had reopened.

"Q. From the record that you have ... does it appear that that particular wound did in fact re-open?

A. No.

Q. Looks as if it stayed closed?

A. Yes."

Had the treating physician been called, he would also have been limited by the records available since he could not remember treating the defendant. The record does not indicate that failure to call Dr. Hagedorn jeopardized the defendant's ability to defend himself or that defendant counsel's failure to call the witness was unreasonable.

This court will not second guess isolated incidents of an attorney's trial tactics in a particular case, *Dull v. State*, (1978) 267 Ind. 549, 372 N.E.2d 171, absent a clear and convincing showing that the trial, taken as a whole, was a mockery of justice. *Baker v. State, supra.* The defendant has not offered clear and convincing reasons that the failure to call one witness was so prejudicial to his case that it amounted to the mockery of justice indicative of inadequate counsel.

Accordingly, the judgment of the trial court is affirmed.

MILLER, J., concurs.

YOUNG, J., dissents with opinion.

YOUNG, Judge, dissenting.

I dissent.

The evidence here is insufficient to trigger the so-called exigent circumstances— emergency doctrine [1] exception to the requirement that a warrant be obtained in order to enter the defendant's apartment and to effect an arrest. The police were engaged in the criminal investigation of a burglary. They knew that someone had thrown a cement block through a store window and may have been cut in the process. A trail of blood led to the defendant's apartment. After knocking and receiving

---

[1] The emergency doctrine had its origin in a dictum enunciated by Justice Jackson in *Johnson v. United States*, 333 U.S. 10, 14–15, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1947): "There are exceptional circumstances in which, on balancing the need for effective law enforcement against the right of privacy, it may be contended that a magistrate's warrant for search may be dispensed with." The Supreme Court later suggested such a situation might occur "where the officers, passing by on the street, hear a shot and a cry for help and demand entrance in the name of the law." *McDonald v. United States*, 335 U.S. 451, 454, 69 S.Ct. 191, 192, 93 L.Ed. 153 (1948). The doctrine has been applied in many varying circumstances. Illustrative cases are *United States v. Barone*, 330 F.2d 543 (2d Cir.), cert. denied, 377 U.S. 1004, 84 S.Ct. 1940, 12 L.Ed.2d 1053 (1964) and *Wayne v. United States*, 115 U.S.App.D.C. 234, 318 F.2d 205, cert. denied, 375 U.S. 860, 84 S.Ct. 125, 11 L.Ed.2d 86 (1963). We need not discuss in detail these cases or others relied on by the State, as they are reviewed in full in both the majority and dissenting opinions of the Missouri Supreme Court in *State v. Sutton, supra.*

For purposes of the instant case, the emergency or exigency doctrine may be stated as follows: police officers may enter a dwelling without a warrant to render emergency aid and assistance to a person whom they reasonably believe to be in distress and in need of that assistance. In applying this doctrine, two principles must be kept in mind. (1) Since the doctrine is an exception to the ordinary Fourth Amendment requirement of a warrant for entry into a home, the burden of proof is on the state to show that the warrantless entry fell within the exception. *McDonald v. United States*, 335 U.S. at 456, 69 S.Ct. 191; *United States v. Jeffers*, 342 U.S. 48, 51, 72 S.Ct. 93, 96 L.Ed. 59 (1951). (2) An objective standard as to the reasonableness of the officer's belief must be applied.

"* * * [I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. * * And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968).

*Root v. Gauper*, (8th Cir. 1971) 438 F.2d 361, 364–65.

no response, the police entered the apartment.

The majority found the existence of reasonable grounds for the belief that an emergency existed. I do not agree that these grounds made the belief of the police reasonable. Nor do I believe that the search was not primarily motivated by an intent to arrest, rather than to render aid or to investigate an emergency. The facts are not sufficient on which to base the broad exception adopted by the majority. In our review, we should be careful not to let the exceptions swallow the rule.

I find the summary and guidelines of the emergency doctrine as set forth by the Court of Appeals of New York to be helpful. In *People v. Mitchell*, (1976) 39 N.Y.2d 173, 383 N.Y.S.2d 246, 347 N.E.2d 607, cert. denied 426 U.S. 953, 96 S.Ct. 3178, 49 L.Ed.2d 1191, the court set out the basic elements of the doctrine as follows:

> (1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property.
>
> (2) The search must not be primarily motivated by intent to arrest and seize evidence.
>
> (3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched. [Footnote omitted.]

The police must have reasonable grounds to believe an emergency existed and that belief must be judged by an objective standard.

While an officer testified that they were concerned for the safety of defendant's life, we do not find facts sufficient to justify, objectively, a reasonable belief that an emergency existed. "Emergency circumstances involving injury or imminent danger to a person's life justify governmental intrusion for the purpose of preventing further injury or aiding those injured." *Bruce v. State*, (1978) 268 Ind. 180, 375 N.E.2d 1042, 1062, *cert. denied*, 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed.2d 662. Here the circumstances are ambiguous in terms of imminent threat to life unlike instances where facts required an emergency investigation.[2] The quantity of blood is no indication of the seriousness of the injury. There was no evidence of a shooting or the use of deadly force. No cry for help was heard. There was no report by a third person of serious injury, only speculation on the part of the police. In fact, the defendant was tending his wound when the officers kicked in the front door. He was not taken to the hospital but to jail. In short, I do not find the circumstances to be sufficient to support a reasonable belief and therefore, to support a warrantless search and arrest based upon the belief that there was an immediate need for assistance to protect a life.

In addition, the protection of human life or property in imminent danger must be the motivation for the search, rather than a desire to apprehend a suspect. A criminal investigation had been launched by the police officers responding to the call to the store. It is difficult to determine that the investigation had been momentarily set aside and that an emergency which threatened life was discovered. The circumstances do not indicate that the entry was primarily to render aid, rather they indicate that such was the pretense to enter and make an arrest. The officer who discovered the blood-smeared apartment door did not enter but summoned another officer. Upon the arrival of that officer they entered the apartment.

In the absence of a showing, by the State, of reasonable belief that necessity existed—

---

**2.** *See e. g. Bruce v. State*, (1978) 268 Ind. 180, 375 N.E.2d 1042 (report of accident with person trapped in vehicle); *Thompson v. McManus*, (8th Cir. 1975) 512 F.2d 769 (report of an assault); *Commonwealth v. Franklin*, (Mass. 1978) 385 N.E.2d 227 (report that a person was attacked by man with a gun, followed by the police hearing gunshot coming from neighboring building); *People v. Hodge*, (1978) 44 N.Y.2d 553, 406 N.Y.S.2d 736, 378 N.E.2d 99 (murder scene); *People v. Gallmon*, (1967) 19 N.Y.2d 389, 280 N.Y.S.2d 356, 227 N.E.2d 284 (report of loud and noisy disturbance by boarders in rooming house); *United States v. Herndon*, (S.D.Fla.1975) 390 F.Supp. 1017 (report of a shooting incident).

that is, an imminent and substantial threat to life, health or property—the constitutional requirement of a warrant must prevail. I do not find that the State carried this burden and, therefore, I would hold the trial court erred.