THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
BRIGETHIA A. GUINS, Appellant.

Fourth Department, April 26, 1991

APPEARANCES OF COUNSEL

*Richard Priest (Bruce Bryan* of counsel), for appellant.

*Robert E. Wildridge, District Attorney (James P. Maxwell* and *Ralph D. Tortora, III,* of counsel), for respondent.

OPINION OF THE COURT

GREEN, J.

The primary issue presented in this case is whether evidence seized by the police, without a warrant, from defendant's apartment following a fire, should have been suppressed. We agree with defendant that the seizure was unlawful because it exceeded the reasonable limits of the emergency exception to the warrant requirement and the reason for the seizure was to obtain evidence of a crime, which was impermissible in the absence of a search warrant.

At approximately 12:30 A.M., on May 7, 1988, a fire of suspicious origin occurred in defendant's apartment on the third floor of a building in Syracuse, New York. Defendant was not home at the time. Several members of the Syracuse Fire Department responded and Investigator Hewitt observed that the fire started on the rear porch and spread into the kitchen of defendant's apartment. While examining for damage, Hewitt entered a long walk-in closet adjacent to the kitchen. He saw some boxes in the rear of the closet, opened them and found empty glassine envelopes inside. He also observed in the rear of the closet a locked security box, undamaged by the fire, with a melted plastic bag stuck to the outside. The safe was approximately 18 inches long by 12 inches wide and weighed 10 to 15 pounds. Hewitt suspected that the safe might contain contraband and notified the police.

At approximately 1:15 A.M., Syracuse Police Sergeant Edward Uhlig arrived at the fire scene. He entered defendant's apartment to investigate "some alleged drug paraphernalia" and "some possible contraband" in the closet which Hewitt had brought to Uhlig's attention. Uhlig attempted to open the locked security box, but without success. He then directed evidence technician William Cianciola to photograph the box and to remove it to the police station for safekeeping. None of defendant's other property was removed from the apartment. It was secured under tarps and other protective covering.

As Cianciola carried the security box out of defendant's apartment, "it slipped out" of his hands and rolled down a

flight of stairs, but did not open. Cianciola explained that the box was wet, the stairwell was dark and several fire hoses were lying in the landing. Cianciola arrived at the police station at approximately 2:50 A.M. He placed the security box on a dolly and wheeled it into a vault. Cianciola asked Uhlig to watch the safe while he went outside to retrieve his camera from the patrol car. When Cianciola returned within a few minutes, Uhlig had already opened the safe. Uhlig testified at the suppression hearing that "as I went to move the security box off the dolly I yanked on the handle and the security box opened." A photograph of the security box, however, indicated that it did not have a handle. After opening the box, Uhlig observed a closed brown paper bag inside. He opened the bag and discovered more than three kilograms of a white powdery substance later determined to be cocaine.

The maintenance superintendent of the apartment building arrived on the fire scene at approximately 12:45 A.M. He remained there throughout the early morning hours, talked to several police and fire officials, and eventually boarded up and secured the premises. At approximately 6:10 A.M., Police Officer Patrick Lynch executed a search warrant at defendant's apartment and seized from the walk-in closet the box of glassine envelopes that Hewitt had previously opened and also a plastic case with a set of triple beam balance scales.

Defendant was indicted for criminal possession of a controlled substance in the first degree (Penal Law § 220.21 [1]), for possessing the cocaine seized from the security box, and for criminally using drug paraphernalia in the second degree (Penal Law § 220.50 [2]), for possessing the glassine envelopes. The hearing court denied defendant's motion to suppress. The court, after giving "full credibility to the testimony of the police officers" and finding "their testimony reasonable and probable", concluded that Officer Cianciola properly removed the security box from defendant's apartment to secure it and, thereafter, that Officer Uhlig properly opened it and seized the evidence therein. The court characterized Uhlig's action in yanking the box open as "only an inadvertent happening."

After a bench trial, defendant was convicted as charged and sentenced to concurrent terms of 18 years to life on the cocaine possession and 1 year on the drug paraphernalia possession. On appeal she argues that her motion to suppress should have been granted, that the circumstantial evidence of her constructive possession of the contraband was insufficient and that her sentence is harsh and excessive.

Defendant had a heightened expectation of privacy in her apartment (see, *Payton v New York,* 445 US 573, 585, 589-590; *People v Knapp,* 52 NY2d 689, 694). The fact that defendant was a victim of a fire of unknown origin did not diminish her right of privacy in her home. The mere fact that a fire has occurred does not give the police carte blanche to enter one's home, without a warrant, even when the police have probable cause to suspect that evidence of a crime may be within the premises (see, *United States v Hoffman,* 607 F2d 280). A fire does not open the damaged property to the public. The property continues to be protected by the State and Federal Constitutions from unreasonable scrutiny by governmental officials (see, *Michigan v Clifford,* 464 US 287; *Michigan v Tyler,* 436 US 499; *People v Calhoun,* 49 NY2d 398, 402). Defendant does not challenge the authority of officials to enter her apartment to extinguish a fire or to remain for a reasonable time to investigate the cause of the fire (*Michigan v Tyler, supra).* What defendant does assert, however, is that the police had no right to search and seize property in her home, without a warrant, on the pretext that they were protecting her valuables when, in reality, they were looking for evidence of a crime.

The emergency exception to the warrant requirement sanctions warrantless searches and seizures only in limited circumstances presenting an immediate danger to life or property (see, *People v Calhoun, supra,* at 403). This exception must be narrowly construed because it is susceptible of abuse and may be used to validate an otherwise unlawful arrest or seizure (see, *People v Gallmon,* 19 NY2d 389, 394). Thus, "there is a strong factual inference that an entry which results in an arrest or seizure of evidence was for the purpose of effecting an arrest or seizure" and "[t]hat inference should prevail unless the police establish a different purpose justified by objective evidence of a privileged basis for making the entry" (*People v Gallmon, supra,* at 395). There is no such evidence in this case.

Officer Uhlig acknowledged that he entered defendant's apartment and looked into the walk-in closet because Fire Investigator Hewitt told him that the safe and box of glassine envelopes may constitute evidence of a crime. Uhlig also conceded that he immediately, but unsuccessfully, attempted to open the security box to see if it contained contraband. Since the warrantless search and seizure of the security box and glassine envelopes were motivated by Uhlig's intent to

seize evidence of a crime, it cannot be justified by the emergency exception to the warrant requirement *(cf., People v Mitchell,* 39 NY2d 173, 177-179). The conduct of the police and fire officials at defendant's apartment was constitutionally circumscribed by the exigency of the fire. Although the protection of valuable property of a fire victim from vandals and looters is a legitimate governmental interest *(see, South Dakota v Opperman,* 428 US 364, 369), the legitimacy of this interest does not undercut the necessity for a warrant to safeguard the substantial privacy interests implicated by entry into defendant's home by the police *(see, Mincey v Arizona,* 437 US 385, 393-394; *United States v Parr,* 716 F2d 796, 812).

Moreover, there was no need for the police to remove the security box from defendant's apartment because the fire had been quelled, and the building was secured by the police and the maintenance superintendent. It is worthy to note that other valuables were left in the apartment under cover. Also, the police did not fully follow their own procedure which, as established at the suppression hearing, requires that a fire victim's property be secured at the fire scene if at all possible. On this record, the police failed to explain why almost all of defendant's property, including her clothes and other valuables, could be secured adequately by covering them with tarps, but the security box could not have been secured similarly within defendant's apartment. The police had ample time to seek a warrant if they wanted to seize the security box *(see, United States v Parr, supra,* at 816, n 21; *see also,* 3 LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 10.4 [c] [2d ed]). "There was therefore no excuse for proceeding without a warrant, unless it was the personal impatience or inconvenience of the police, considerations which never may be permitted to outweigh the constitutional interests at stake" *(People v Knapp, supra,* at 697).

We conclude that the warrantless seizure of the security box from the closet of defendant's apartment was not justified under the emergency exception to the warrant requirement *(see, Michigan v Tyler, supra).* The seizure of the drug paraphernalia pursuant to the search warrant must also be suppressed since the probable cause for the warrant was based on the illegal removal and opening of the security box *(see, Wong Sun v United States,* 371 US 471).

Accordingly, the judgment should be reversed, defendant's motion to suppress granted and the indictment dismissed.

DILLON, P. J., CALLAHAN, DENMAN and PINE, JJ., concur.

Judgment unanimously reversed, on the law, motion granted and indictment dismissed.