INDIANAPOLIS RAILWAYS, INCORPORATED *v.* TERMINAL
MOTOR INN, INC.

[No. 18,356. Filed May 26, 1953. Rehearing denied June 3, 1953.
Transfer denied October 2, 1953.]

Gilliom, Armstrong & Gilliom, Arthur L. Gilliom, Elbert R. Gilliom, Robert D. Armstrong, Richard L. Gilliom, all of Indianapolis, and Hugh Couch, of Martinsville, for appellant.

Cadick & Burns, Jeremiah L. Cadick and Floyd W. Burns, of Indianapolis, and Gilbert W. Butler, of Martinsville, for appellee.

ON PETITION FOR REHEARING

KENDALL, C. J.—The opinion in the above entitled cause, under date of April 7, 1953, is withdrawn.

This action was brought by the plaintiff (appellee herein) against the defendant (appellant herein) to recover damages on account of the alleged wrongful termination by the appellant of a certain lease made with the appellee and also of a Supplemental Indenture.

The property covered by the lease, excepting certain parts which had been sublet, was used by appellee for use as a parking lot for automobiles.

The original lease upon which this lawsuit is predicated was dated February 15, 1936. The appellant leased to the appellee different tracts of real estate designated as tracts 1, 2, 3 and 4 in Block 47 to the original town of Indianapolis, Indiana, which lease was for a period of five (5) years. There was a Supplemental Indenture made between the same parties on December 16, 1937, granting to the appellee the right which was subsequently exercised to renew said lease for two (2) additional five-year terms, ending August 31, 1951, subject, however, to cancellation by the lessor (appellant herein) at any time on giving one hundred and twenty (120) days' notice as to all, or part, of the leased tracts of real estate under the terms and conditions of the cancellation provisions therein referred to. There were also two (2) other tracts then under separate leases between the same parties but not included in the lease in question herein. Said two (2) additional tracts being as follows:

(a) One tract which shall be referred to as tract five was held by appellee under a month-to-month lease entered into in 1941 and cancelable by the lessor (appellant herein) on a thirty-day notice;

(b) Another tract which shall be referred to as tract six which was held by lessee under a lease entered into in April, 1948, for a period from that date to August 31, 1951, and likewise cancelable by lessor on a thirty-day notice.

On December 16, 1937, a Supplemental Indenture to the 1936 lease was entered into by appellee and appellant covering the premises in the original lease designated as tracts 1, 2, 3 and 4.

Appellee filed this action for damages alleging unlawful termination of the lease and also the subsequent Indenture of real estate mentioned as tracts 1, 2, 3 and 4. Tracts 5 and 6, held under a month-to-month lease, were adjacent to the leased premises and were used for overflow parking. The leases to tracts 5 and 6 were lawfully cancelled by appellant and no wrong is predicated therein.

Trial to a jury. A general verdict was rendered in favor of appellee in the sum of $68,875.00. Motion for new trial was filed by appellants, which was overruled, and appropriate judgment duly entered.

The assignment of error relied upon by appellants are, (1) the court erred in overruling defendants' (appellants') motion for new trial as to each ground therein-stated and numbered one to eight, inclusive. We find no error in connection therewith, except as hereinafter discussed.

The appellants claim, (1) that the court erred in the admission of testimony as to the net profits prior to the termination of the lease, of the whole area, including tracts 5 and 6 which were not included in the leased premises; (2) that the proceeds from tracts 1 and 2 were not separately determinable.

We shall first consider clauses 4 and 5 of appellants' motion for new trial, wherein appellants claim that

error of law occurred at the trial in the admission of the testimony of appellee's witness, Torrence Baxter Rogers. Certain questions were propounded to Mr. Rogers to which objections were made and answers given, and, for a determination of the question presented in clauses 4 and 5, we deem it necessary to recite a portion of such questions and answers.

"Q. What were the parking rates in effect in the Terminal Motor Inn business during the years 1939 to 1948, both inclusive?

"Mr. Elbert Gilliom: Before the question is answered the defendant objects for the reason that the only purpose of the question would be to attempt to prove or establish what the profits might have been from the operation of these parking spaces and the defendant objects to this question and will object to similar questions relating to items of income or expenses with respect to the operation of these parcels during this period.

"1st. The parties agreed in a Supplemental Indenture of 1937, amending the lease of 1936, that the value of the loss of the use of the premises covered by that lease for the period December 31, 1948 to August 31, 1951, which was the balance of the term of the lease that was cancelled, is a sum equal to a product two thousand dollars times two and two-thirds years, remaining between those dates, and the plaintiff may not prove any other value for loss of use in view of that agreement.

"2nd. Any evidence of profits at the time of the operation of parcels one and two prior to 1948, if otherwise admissible, would be too remote in point of time for determining the value of the loss of the use of parking areas in items one and two of the leased premises in the period from December 31, 1948 to August 31, 1951.

"3rd. No evidence has been introduced from which the profits could be determined with reasonable certainty or accuracy, even as to the time inquired about, and, the evidence affirmatively shows that these parcels were operated together and that receipts and expenses from them were

commingled in such way that those pertaining to items one and two, the only items in questions in this case cannot be separated and that the operation of items one and two by the plaintiff were commingled with operations of other parking lots of substantial number operated by the same management and same ownership under other corporate names, receipts from which were deposited in a single bank account and there being no separation of the specific items of income and expenses pertaining to the operation of items one and two which are the only items involved in this law suit.

"As an additional ground for objecting, the profits realized by the plaintiff from the operations of items one and two, in the period involved in this law suit namely: January 1, 1949, to August 31, 1951, are indefinite and speculative and would be merely guess work to attempt to estimate those profits. That is also true as to any of the previous periods as to which this information may be sought.

"Court: Objection overruled.

"A. Day rate hours not exceeding one hour 15¢."

.   .   .   .

"Q. Do you know, Mr. Rogers, what the net profits of the plaintiff corporation were for the year 1948?"

.   .   .   .

"A. I do.

"Q. What were they?

"Mr. Gilliom: The defendant objects on the same grounds.

"Court: Same ruling.

"A. It was in excess of $33,000.00.

"Q. Do you know what the net profits were for 1947?"

"Mr. Gilliom: Same objection.

"Court: Same ruling.

"A. Yes.

"Q. What were they?

"Mr. Gilliom: The defendant objects on the same grounds.

"Court: Same ruling.

"A. In excess of $28,000.00.

"Q. Do you know what the net profits were for the year 1946?

"Mr. Gilliom: Same objection.

"Court: Same ruling.

"A. I do.

"Q. What were they?

"Mr. Gilliom: Same objection.

"Court: Same ruling.

"A. In excess of $9,000.00.

"Q. Do you know what the net profits were for the year preceding that?

"Mr. Gilliom: Same objection.

"Court:, Same ruling.

"A. In excess of $10,000.00."

The appellants' objections to the questions were made the basis for appellants' motion to strike from the record the answers given in response to said questions.

From an analysis of the briefs and transcript, it is to be noted that the basis of appellants' objections was that there was not any evidence which the jury could, with any degree of reasonable certainty, ascertain what was, or would have been, the amount of profits from the parking business as to items 1, 2, 3 and 4 because no business thus confined existed from 1945 to 1948, and there was not any evidence from which it could be ascertained what part of the profits from the business being so conducted on the combined areas derived from tracts one and two and part of tracts three and four.

The premises covered by the 1936 lease, to-wit: items 1, 2, 3 and 4, were leased and subleased as cash rentals. There was evidence that in the years 1945, 1946 and 1947 the appellee's parking business was confined to items one and two but when overcrowding of

parked automobiles occurred, parking was extended over into item five. In 1948, item six was added as a further area for a parking lot and in said year appellee's parking business on items one and two were made to extend and include items five and six. It is not contended that the termination of the lease under which appellees use items five and six was wrongful.

The record discloses that in the years 1945 to 1948 there were not any records or accounts kept which showed separately the receipts from the parking business on items one and two or of the receipts from the parking business on items five and six; neither was there any record kept by appellees as to the separate expenses of operation on items one and two or that part of the business pertaining to items five and six.

Mr. Rogers testified that the profit for 1948 was $33,000.00; 1947, $28,000.00; 1946, $9,000.00; 1945, $10,000.00. These amounts represented the net profits from the parking business as a whole on the combined area including items five and six for which no damages are sought to be obtained. Since records were not kept to separately show the receipts and the expenses as pertaining to items one and two or five and six, it is our opinion that it would be impossible to break down or analyze either the receipts or expenses pertaining to said respective items and parcels.

In reference to this particular portion of evidence, the following question was asked witness Rogers:

"Q. As I understand it, then you cannot now break down either the receipts from the parking operation or the operating expense which pertain to items one or two, separate from the other parcels that were operated in conjunction with them in the period which you operated more than items one and two, as your parking business?

"A. No."

There was further evidence that the receipts from the appellees' business were turned over to the Indianapolis Motor Inn, Inc. of which concern witness Rogers was a part-owner and which corporation managed the affairs of the appellee and other companies with which appellee corporation was affiliated; that all of the receipts from the various operating business concerns were deposited in banks to the account of Indianapolis Motor Inn, Inc.; likewise, the expenses of appellee corporation and affiliated concerns were paid out of one account by the Indianapolis Motor Inn, Inc. In the instant case, there was not any evidence given to the jury by which they could, with any degree of certainty, have made any estimate with a degree of accuracy as to what part of the profits from the whole combined area were attributable to that part consisting of items one and two.

The court is of the opinion that the admission of such evidence as a measure of damages was erroneous. We do not believe the jury should be put in a position of guessing or surmising as to what portion of the income or expenses were for items one and two or five and six. The testimony of Mr. Rogers can only be construed in testifying as to profits that they included *total net* profits and that to permit such testimony is speculative, uncertain and too remote to be considered as a basis for computing or ascertaining the correct measure of damages for loss of profits from the real estate described in the original lease and the subsequent Indenture.

We believe the general rule to be that loss of profits are admissible as a measure of damages only when they can be ascertained with a relative degree of certainty and that in event such loss of profits cannot be ascertained with certainty, then the

measure of damages is the difference in rental value, if any, in the property involved. *Maddox* v. *Yocum* (1941), 109 Ind. App. 416, 31 N. E. 2d 652; *Maddox* v. *Yocum* (1944), 114 Ind. App. 390, 52 N. E. 2d 636; *Broadway Photoplay Co.* v. *World Film Corporation* (1919), 225 N. Y. 104, 121 N. E. 756.

The appellees cite the case of Maddox v. Yocum (1944), *supra,* and *The City of Terre Haute* v. *Hudnut* (1887), 112 Ind. 542, 13 N. E. 686, as substantiating their contention. Those two cases substantially hold that where an established business has been interrupted or destroyed, evidence of past net profits of the business is admissible. We believe the cases just cited are distinguishable from the facts under consideration. In both cases of *Maddox* v. *Yocum, supra,* and *The City of Terre Haute* v. *Hudnut, supra,* the evidence on profits were confined to business done *only* on the specific property which was then in issue. In the case of *The City of Terre Haute* v. *Hudnut, supra,* the premises consisted of a single grain mill and the profit evidence there admitted was confined strictly to profits from the operation of the mill. In the case of *Maddox* v. *Yocum, supra,* the premises there involved consisted of a single gasoline filling station located on a farm at the intersection of two highways, and the profit evidence there admitted was confined strictly to profits from the operation of a single filling station. In each of those cases the test as applied by the court was whether the profit evidence showed the amounts of the profit in issue with a reasonable degree of certainty.

In the case of *Maddox* v. *Yocum* (1941), *supra,* (transfer denied), the rule was announced as follows:

> "Profits derived from a business conducted on property are too speculative, uncertain and remote to be considered as a basis for computing or ascertaining the rental value of property."

Appellees further cite the case of *Eastman Kodak Company of New York* v. *Southern Photo Materials Company* (1927), 273 U. S. 359, 47 Sup. Ct. 400, 71 L. Ed. 684. We do not believe the facts of that case are comparable with the situation now under consideration and are therefore not in point.

There was conflict between the testimony of appellees' witnesses as to the fair rental value of the property in question, and, in view thereof, this court cannot say that the admission of the testimony of such witnesses over the objection of the appellants herein as to the net profits on tracts of real estate not involved in the lease and also on tracts 5 and 6 during the remaining period of the tenancy of the new lease was not harmful. We, therefore, believe and hold that the admission of said testimony over objection was erroneous and was prejudicial to the appellant as to the amount of damages fixed, and, for that reason, said cause should be reversed.

Judgment reversed with instructions for the court to sustain appellants' motion for new trial. Petition for rehearing overruled.

NOTE.—Reported in 112 N. E. 2d 596.