LEVON WILSON *v.* STATE OF INDIANA.

[No. 3-1175A254. Filed May 27, 1976. Rehearing denied June 28, 1976. Transfer denied September 22, 1976.]

Lee J. Christakis, of Gary, for appellant.

Theodore L. Sendak, Attorney General, James N. Shumacker, Deputy Attorney General, for appellee.

GARRARD, J.—Appellant Wilson was charged with robbery and was subsequently convicted of theft. His appeal challenges the introduction of certain evidence at trial and asserts the prosecution was barred because he was subjected to double jeopardy. We affirm the conviction.

The claim of double jeopardy arises from the following proceedings. The case was called for trial on March 25, 1974 and voir dire examination of the jury commenced. At 3:30 in the afternoon, defense counsel suggested to the court that he felt Wilson was not competent to stand trial. Pursuant to IC 1971, 35-5-3.1-1[1], the court immediately appointed two physi-

---

1. "35-5-3.1-1. Hearing to determine defendant's sanity during trial. —When at any time before the final submission of any criminal cause to the court or jury trying the same, the court, either from its own knowledge or upon the suggestion of any person, has reasonable ground

cians to examine Wilson and instructed them to report their findings as quickly as possible. Then, without objection, the court proceeded to impanel the jury. The next day the parties settled preliminary instructions, and the state commenced its case in chief when the reports of the examining physicians were presented. The court then determined that Wilson was not competent to stand trial and declared a mistrial. Several months later, Wilson moved for dismissal of the charges after the department of mental health had certified that he was competent to stand trial.

In view of the statutory direction that trial proceed without delay in the event the court determined Wilson was competent, we do not believe it was error for the court to proceed as it did, since the venire was already present and no objection was made.

Longstanding federal interpretation, equally applicable under Article I, Section 14 of the Indiana Constitution, holds that a mistrial declared *sua sponte* by the court will not bar a subsequent prosecution where there is a manifest necessity for the action or the ends of justice would be otherwise defeated. *Mooberry* v. *State* (1973), 157 Ind. App. 354, 300 N.E.2d 125, and cases cited therein. We hold such manifest necessity is established where

for believing the defendant to be insane, the court shall immediately fix a time for a hearing to determine the question of the defendant's sanity and shall appoint two [2] competent disinterested physicians who shall examine the defendant upon the question of his sanity and testify concerning the same at the hearing. At the hearing, other evidence may be introduced to prove the defendant's sanity or insanity. If the court shall find that the defendant has comprehension sufficient to understand the nature of the criminal action against him and the proceedings thereon and to make his defense, the trial shall not be delayed or continued on the ground of the alleged insanity of the defendant. If the court shall find that the defendant has no comprehension sufficient to understand the proceedings and make his defense, the trial shall be delayed or continued on the ground of the alleged insanity of the defendant. If the court shall [find] that the defendant has no comprehension sufficient to understand the proceedings and make his defense, the court shall order the defendant committed to the department of mental health, to be confined by the department in an appropriate psychiatric institution."

it is determined during the trial that the defendant is incompetent to stand trial.[2]

Wilson next complains of the introduction into evidence of a knife found on his person. The testimony disclosed that Wilson was a recipient of poor relief. On November 9, 1973, he went to the office of the Calumet Township Trustee. While he was discussing a problem with an employee, the trustee entered and gave the employee her paycheck. The trustee left, and the employee placed the check in her desk. Moments later when Wilson's interview was concluded, he went around the desk, knocked the employee from her chair, and took the paycheck. The employee called for help and Wilson was caught and subdued by other employees. During the struggle involved in his apprehension, Wilson attempted to reach under his coat. When the police arrived, Wilson was searched and the knife in question was found wrapped in a piece of newspaper and tucked under his waistband behind his back.[3] At trial, the knife was introduced in evidence over Wilson's objection. The state was entitled to introduce the knife with which Wilson was armed as part of the res gestae. See, United States v. Freeman (C.A. 7, 1953), 203 F. 2d 387; Francis v. State (1974), 161 Ind. App. 371, 316 N.E.2d 416; see, also, Kiefer v. State (1960), 241 Ind. 176, 169 N.E.2d 723. Moreover, in Wilson's case introduction of the knife would not appear to have contrib-

---

2. It should also be noted that an initial mistrial will not bar a subsequent prosecution where the mistrial was sought or consented to by the accused. In its most recent consideration of this doctrine, the United States Supreme Court stated that the consent rule applies even though the accused is confronted with an apparent "Hobson's choice" in the absence of any showing of bad faith conduct by the judge or prosecutor designed to harass the accused by successive prosecutions or to merely afford the prosecution a more favorable opportunity to convict. See, United States v. Dinitz (1976), 424 U.S. 600, 96 S. Ct. 1075.

3. Testimony referred to the knife as a "household knife." We are otherwise uncertain of its description, since it remains in the custody of the trial court pursuant to Indiana Rules of Procedure, Appellate Rule 7.2(A)(3)(b). We mention this to call attention to the desirability of including a photograph or brief written description of the exhibit in the transcript.

uted to the conviction actually rendered. The evidence to sustain the finding of theft was overwhelming. Under such circumstances, even if we found error, it would be harmless.

Wilson next claims error over the introduction into evidence of a Xerox copy of the payroll check. The objection was that no proper foundation had been laid to excuse the requirement that the state produce the original.

It is suggested that the copy was capable of introduction pursuant to IC 1971, 34-1-17-7 which provides:

> "Exemplifications or copies of records, and records of deeds and other instruments, or of office books or parts thereof, and official bonds which are kept in any public office in this state, shall be proved or admitted as legal evidence in any court or office in this state, by the attestation of the keeper of said records, or books, deeds or other instruments, or official bonds, that the same are true and complete copies of the records, bonds, instruments or books, or parts thereof, in his custody, and the seal of office of said keeper thereto annexed if there be a seal, and if there be no official seal, there shall be attached to such attestation, the certificate of the clerk, and the seal of the circuit or superior court of the proper county where such keeper resides, that such attestation is made by the proper officer."

While we doubt that the paycheck in question qualifies as a public record within the purview of this statute, we need not so decide. The statute requires an attestation and it is undisputed that none was appended to the exhibit in question. The copy was not allowable under this statute.

We are also aware of IC 1971, 34-3-15-1, 2 and 3 which provide:

> "Any business may cause any or all records kept by such business to be recorded, copied or reproduced by any photographic, photostatic or miniature photographic process which correctly, accurately and permanently copies, reproduces or forms a medium for copying or reproducing the original record on a film or other durable material, and such business may thereafter dispose of the original record."
>
> "Any such photographic, photostatic or miniature photographic copy or reproduction shall be deemed to be an

original record for all purposes and shall be treated as an original record in all courts or administrative agencies for the purpose of its admissibility in evidence. A facsimile, exemplification or certified copy of any such photographic copy or reproduction shall, for all purposes, be deemed a facsimile, exemplification or certified copy of the original record."

"For purposes of this act [34-3-15-1—34-3-15-3] 'business' shall mean and include such business, bank, industry, profession, occupation and calling of every kind."

The primary thrust of this statute is to permit businesses to substitute copies for original records. Such copies may then be used as originals. There was no evidence in the case before us qualifying the exhibit as a photographic, etc., copy maintained by the business under this statute.

We return then to the objection made. As commonly stated, the rule prohibits introduction in evidence of a copy of a document or writing unless and until the absence of the original is accounted for on some reason other than the serious fault of the proponent. The purpose of the rule is to ensure trustworthiness. In earlier times a "copy" was a handmade reproduction. It was amenable not only to deliberate falsification but to scrivener's error and, in some instances, a "sure" recollection which was in fact not sure at all. That the rule has been so premised and has had sufficient flexibility to respond to circumstances where its application is uncalled for, may be readily determined from our prior decisions.[4]

In *Federal Union Surety Co.* v. *Indiana, etc. Mfg. Co.* (1911), 176 Ind. 328, 95 N.E. 1104, the Court considered the admissibility of one of three copies of an order prepared on an "autographic register." Holding the document admissible without the others having been accounted for, the Court stated:

---

4 We exclude from our consideration here those cases where the court described the copies as bearing an original signature of the party charged since they might be distinguished on those grounds.

"Each of the three slips was printed by a single mechanical impression. There is a distinction between letterpress copies of writing, and triplicate writings produced as was the slip in controversy. The law does not require the doing of unnecessary things. The slip delivered to the contractor was of necessity exactly like the slip admitted, and may be regarded as a triplicate original, and no useful purpose would be subserved by requiring a notice for the production of the slip delivered to the contractor." 176 Ind. 328, 331, 95 N.E. 1104, 1106.

The Court similarly ruled in *Pittsburgh, C.C. & St. L. Ry. Co.* v. *Brown* (1912), 178 Ind. 11, 98 N.E. 625, that a copy of a bill of lading was admissible without accounting for a duplicate original. (The offering party's original was shown to have been lost.) While the facts of the case are not as strong, the language chosen by the Court is:

"Where duplicates are produced by mechanical means, all are duplicate originals and any of them may be introduced in evidence without accounting for the nonproduction of the other." 178 Ind. 11, 30, 98 N.E. 625.

In *Watts* v. *Geisel* (1935), 100 Ind. App. 92, 194 N.E. 502, the Appellate Court approved the introduction in evidence of an apparently unsigned carbon copy of a letter. The court stated that in absence of proof that it was not a true copy, it was primary evidence and admissible.

The court again allowed admission of a carbon copy in *Town of Frankton* v. *Closser* (1939), 107 Ind. App. 193, 202, 20 N.E.2d 216, 220. Significantly, the court stated:

"No objection was made (nor was there any effort to show) that the copy offered in evidence was not a carbon copy of the original. In the absence of such showing we may fairly infer that the type-written copies prepared by the attorney were carbon copies or duplicate originals and as such they may be introduced in evidence without accounting for any other impressions of the writing." [Citations omitted. Parentheses added for clarification.]

While it may be noted that these decisions all involved copies produced simultaneously, the importance of that fact is not the time of production. Under the technology of the

times, it was the assurance of trustworthiness. *See, e.g.,* McCormick On Evidence (2nd Ed.) §§ 231, 236.

Thus, McCormick points out that with the advent of modern technology in the production of facsimiles, no good reason exists for excluding such copies under the rule unless there is raised some issue of authenticity which might be resolved by requiring presentation of the original. McCormick, *supra,* p. 569.[5] In this connection, it should also be noted that modern ability to secure discovery of documents greatly reduces the opportunity for surprise or injustice through the production at trial of a thitherto undisclosed written exhibit.

Similarly, the Federal Rules of Evidence now permit use of duplicates without accounting for the "original" unless authenticity is in issue or it would be unfair under the circumstances to permit use of a duplicate. Federal Rules of Evidence, Rules 1001-1003.

We think the position taken by McCormick and the federal rules is proper and clearly supported by the decisions of the Supreme and Appellate Court of this state.

We therefore hold that a "duplicate" of a document or other writing is a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and miniatures, or by mechanical, electronic or chemical reproduction or other equivalent technique which accurately reproduces the original.[6] Such duplicates are admissible in evidence to the same extent as an original unless a genuine issue is raised as to the authenticity of the original, or under

---

5. For example, identification of watermarks, types of paper and inks used in the document may aid in determining its genuineness. On the other hand, we also take note of the common practice of the parties in moving the court for permission to substitute copies for the record once the original has been produced. While this practice retains whatever guarantee of trustworthiness use of the original provides, it appears to be a useless formality when genuineness or completeness are not in issue.

6. This tracks the language of the federal rule applicable to writings. F.R.E. § 1001(4).

the circumstances existing it would be unfair to admit the duplicate as an original. By this latter qualification, we refer primarily to circumstances affecting the trustworthiness of the duplicate for the purpose for which it is offered. Such circumstances might occur where the duplicate is not fully legible or where only a portion of the total original document is offered and the remainder would be useful for cross examination, or might qualify the portion offered, or otherwise be useful to the opposing party.

In the case before us no question was presented regarding authenticity of the original check or its contents, nor was any other reason advanced for rejection of the duplicate, except that it was not the original. There was no error in admitting the duplicate.

Wilson finally urges error in two instructions given by the court. We are forced to conclude that no reviewable error is presented by either assertion. No mention of one of the instructions was made in the motion to correct errors. We have examined the transcript, and it does not disclose what objection, if any, was made to either instruction at trial. *See,* CR. 8(B), TR. 59(G), AP. 8.3(A)(7).

The judgment is affirmed.

Staton, P.J., concurs; Hoffman, J., concurs in result with opinion.

### CONCURRING OPINION

HOFFMAN, J.—I concur in result since I do not agree with the reasoning permitting the admission of a photograph of a check into evidence.

The photograph of the check was admissible since it was proved to be a true representation of that which it purports to represent and it was competent evidence because the witness could testify to give a verbal description of the check.

The check was the object stolen and it could have been verbally described by a witness. *Hawkins* v. *State* (1941), 219 Ind. 116, 37 N.E.2d 79; *Highshew* v. *Kushto* (1956), 126

Ind. App. 584, 131 N.E.2d 652 (transfer denied, 235 Ind. 505, 134 N.E.2d 555).

NOTE.—Reported at 348 N.E.2d 90.